**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER ANDERSON,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-02144** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **BETH HERB, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before are Defendants' motions to dismiss pro se Plaintiff Walter Anderson ("Anderson")'s complaint. For the reasons stated below, the Court will grant the motions to dismiss, dismiss with prejudice Anderson's federal claims, decline to exercise supplemental jurisdiction over Anderson's state-law claims, remand his state-law claims to the Court of Common Pleas, and direct the Clerk of Court to close this case.

## I. BACKGROUND

### A. Procedural History

Anderson, a convicted and sentenced state prisoner, commenced this action by filing a complaint in the Court of Common Pleas of Schuylkill County on October 21, 2025. See (Doc. No. 1-2). In the complaint, Anderson names as Defendants: (1) Beth Herb ("Herb"), the Corrections Health Care Administrator at Pennsylvania State Correctional Institution Frackville ("SCI Frackville"); (2) Kyle Mummey ("Mummey"), a Physician's Assistant at SCI Frackville;[1] (3) Kathy J. Brittain ("Brittain"), the Facility Manager a/k/a Superintendent at SCI Frackville;

[1] Anderson refers to Mummey as "K. Mummey" in his complaint, see (id. at 3, 4); however, Mummey indicates that his first name is Kyle, see (Doc. No. 4 at 1). As such, the Court will use Mummey's full name here and direct the Clerk of Court to update his name on the docket to reflect his full name.

and (4) Dr. Laurel Harry ("Harry"), Secretary for the Commonwealth of Pennsylvania Department of Corrections ("DOC"). See (id. at 3–5).

On November 13, 2025, Mummey removed this action from Schuylkill County to this Court. (Doc. No. 1.) The following day, Mummey filed a motion to dismiss Anderson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as well as a supporting brief. (Doc. Nos. 3, 4.) On December 23, 2025, Harry, Brittain, and Herb (collectively, the "Correctional Defendants") filed their own Rule 12(b)(6) motion to dismiss and a supporting brief. (Doc. Nos. 6–7.)

On February 3, 2026, Mummey filed a notice in which he requested that the Court consider his motion to dismiss as unopposed because Anderson did not file a response to the motion despite having ample time to do so. See (Doc. No. 8 at 1–2).[2] Approximately three weeks later, on February 23, 2026, the Clerk of Court docketed Anderson's response to the Correctional Defendants' motion to dismiss. (Doc. No. 9.)[3]

Then, on March 11, 2026, Mummey filed a reply brief in further support of his motion to dismiss. (Doc. No. 10.) Mummey attached to his reply brief a copy of a submission from Anderson in which Anderson contests the Court deeming him unopposed to Mummey's motion to dismiss because he claims to have never received it. See (id. at 1; Doc. No. 10-1). Mummey

[2] Mummey did not reference Local Rule 7.6, which provides in pertinent part that "[a]ny party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief. . . . Any party who fails to comply with this rule shall be deemed not to oppose such motion." See M.D. Pa. L.R. 7.6.

[3] Although the Clerk of Court did not docket Anderson's response until February 23, 2026, it appears that he mailed it for docketing on January 20, 2026. See (id. at 6). As such, the Court deems it filed as of January 20, 2026. See Houston v. Lack, 487 U.S. 266, 276 (1988) (determining that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk").

also indicated that he resent Anderson a copy of his motion to dismiss, brief in support of his motion to dismiss, and reply brief, on March 11, 2026. See (Doc. No. 10 at 2). To date, Anderson has not filed a response to Mummey's motion to dismiss or a motion for an extension of time to do so.

### B. Factual Allegations and Legal Claims in Anderson's Complaint

Anderson alleges that while he was incarcerated at SCI Frackville on January 21, 2025, he went to sick call after "experiencing abnormal frequency in his need to urinate." See (Doc. No. 1-2 ¶ 10). Mummey saw Anderson at sick call, and Anderson relayed his concerns to him. See (id. ¶ 11). Anderson pointed out that he is a fifty-nine-year-old African-American male with "a familial history of cancer," and he requested that Mummey order "a colonoscopy and a complete prostate examination" because he was "[f]earful something was amiss." See (id. ¶¶ 12–13).

Mummey "refused any cancer testing[,] opining that [Anderson's] Prostate Surface Antigen ("PSA")[] was within the normal limits." See (id. ¶ 14). Mummey also informed Anderson that "his complete blood count[] ("CBC"), as well as his fecal occult blood test, . . . tested negative." See (id. ¶ 15). Anderson responded by informing Mummey that he knew at least two other prisoners who received negative test results but were later diagnosed with cancer. See (id. ¶ 16). Mummey "acknowledged negative test results were not indicative of nonexistent cancer but told [Anderson] that the tests would not be ordered because those procedures were 'extremely' costly." See (id. ¶ 17).

Dissatisfied with Mummey's actions, Anderson filed a grievance assigned number 1130294. See (id. ¶ 18). Herb denied Anderson's grievance via a response dated March 10, 2025. See (id. ¶ 19). In her response, Herb "affirmed the denial of preventative measures of

cancer screening." See (id.). She explained that (1) "[a]dults are to be screened for colon cancer between the ages of 45–75," (2) the tests performed on Anderson constituted a "preliminary screening," (3) "the DOC does not send all inmates for colonoscopies unless the . . . preliminary tests are abnormal or family history (sic) are identified as described above," and (4) "expressed confidence . . . Mummey's explanation did not suggest the denial was based on cost saving budgetary issues but apologized '[i]f it came across that way . . . .'" See (id. ¶¶ 20–22 (use of "(sic)" in original)).

Anderson appealed from Herb's decision to Brittain on March 28, 2025. See (id. ¶ 23). Brittain upheld Herb's denial of Anderson's grievance, stating: "[T]here is no evidence of any negligence by the Medical Department. Your medical care is important and thus you are urged to continue working with the physicians as they have the medical license and can make the appropriate clinical decisions for your care." See (id. ¶ 24).

On April 10, 2025, Anderson filed an appeal for final review to the DOC Secretary's Office of Inmate Grievances and Appeals. See (id. ¶ 25). On May 12, 2025, the DOC's Chief Grievance Coordinator, Keri Moore ("Moore"), referred Anderson's grievance to the Bureau of Health Care Services for its review. See (id. ¶ 26). Moore then issued a decision on June 25, 2025, upholding the prior decisions because the "review of the records . . . reflect[ed] that the medical care provided was reasonable and appropriate" and "[n]o evidence of wrong doing [was] identified." See (id. ¶¶ 27–28).

Based on these allegations, Anderson asserts claims against Defendants under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution due to their refusal to order adequate cancer screening based on the costs of the screenings and despite his "vulnerability." See (id. ¶¶ 29–32,

34, 37). He also alleges that Brittain and Harry violated his Eighth Amendment rights by failing to "implement a policy that ensures early cancer screening for [him] and similarly situated prisoners" or "enact directives, protocols and/or policies ensuring that adequate cancer screening be done [sic] before the detection of warning signs." See (id. ¶¶ 33, 35). Anderson further claims that Defendants' actions violated his rights under Article I, Section 13 of the Pennsylvania Constitution and constitute negligence under Pennsylvania state tort law. See (id. ¶¶ 30, 32, 35, 36).

Anderson alleges that Defendants' conduct caused him to "suffer weight loss, stress, emotional trauma, fear, shock, mental anxiety[,] and paranoia," and he indicates that he "will continue to so suffer in the future, sleeplessness, terror, mental anguish and uncertainty regarding his life and whether or not he has cancer." See (id. ¶¶ 38–39). For relief, Anderson seeks, inter alia, (1) a declaration stating that Defendants violated his rights under the Eighth Amendment and the Pennsylvania Constitution, (2) a writ of mandamus "requiring that . . . Harry implement directives, policies and protocols that [Anderson] and similarly situated prisoners, receive a colonoscopy and full prostrate examinations even in the absence of warning signs at least once a year after reaching the age of forty-five," (3) compensatory damages, (4) punitive damages, and (5) nominal damages. See (id. at 9–10). All claims are asserted against Defendants in their individual capacities. See (id. ¶¶ 5–7).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

**B. Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**C. Supervisory Liability Under Section 1983**

To plausibly plead a Section 1983 claim against a supervisory official, a plaintiff's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d

572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining the requirements for the liability of supervisory officials in section 1983 claims and describing the "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is

not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1201 n.6 (3d Cir. 1988)).

### D. Eighth Amendment Claims for Deliberate Indifference to Serious Medical Needs

For a plaintiff to plead a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, they must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." See id. at 837. A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); see also Estelle, 429 U.S. at 106 (explaining

that complaints that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Hope v. Warden York County Prison, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); Montanez v. Price, 154 F.4th 127, 141 (3d Cir. 2025) (pointing out that "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference (citing Spruill, 372 F.3d at 235)).

## III. DISCUSSION

### A. Anderson's Failure to File a Response to Mummey's Rule 12(b)(6) Motion to Dismiss

As noted above, Anderson did not file a response in opposition to Mummey's motion to dismiss either after Mummey originally filed it or after Mummey resent it to Anderson on March 11, 2026. Additionally, Anderson has not filed a motion seeking an extension of time to file a response to the motion. Although Local Rule 7.6 supports this Court deeming Mummey's motion as unopposed, the Third Circuit disfavors district courts granting Rule 12(b)(6) motions based on the opposing party's failure to comply with a Local Rule. See Stackhouse v. Mazukiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (concluding that under Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3d Cir. 1990), the district court should not have dismissed a pro se prisoner-plaintiff's complaint "solely on the basis of" a local rule which allowed the district court to deem a motion as unopposed if the opposing party failed to file a brief "without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in [Rule 12(b)(6)]"); see also Gary v. Pa. Human Relations Comm'n, 497 F. App'x 223, 226 (3d Cir. 2012) (unpublished) ("[M]otions to dismiss should not be granted

without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions.").[4] The Third Circuit has explained that "if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule." See Stackhouse, 951 F.2d at 30.

Despite disfavoring district courts granting Rule 12(b)(6) motions as unopposed, the Third Circuit has explained that there are certain cases in which a Rule 12(b)(6) motion may be granted as unopposed. See id. ("In reaching our result, we do not suggest that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject to dismissal without a merits analysis. . . . Thus, our holding is not broad."). Such cases include those "where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked," as well as "where a party fails to comply with the rule after a specific direction to comply from the court . . . ." See id.

Here, the Court will not deem Mummey's motion to dismiss as unopposed because Anderson is proceeding pro se, and the Court has not issued an Order directing that he file a response to Defendants' Rule 12(b)(6) motions. Therefore, the Court will consider Mummey's motion on its merits.

---

[4] Stackhouse involved an appeal from a dismissal entered in this District pursuant to then-Local Rule 401.6, which is now Local Rule 7.6. See 951 F.2d at 29 (explaining that Rule 12(b)(6) motion was granted as unopposed pursuant to Local Rule 401.6); Jaludi v. Citigroup, No. 15-cv-02076, 2016 WL 11788671, at *1 n.1 (M.D. Pa. Mar. 7, 2016) (noting that Local Rule 401.6 was renumbered Local Rule 7.6 via an amendment to the Local Rules on December 30, 1993).

### B. Mummey's Motion to Dismiss

Mummey raises three arguments in his motion to dismiss. See (Doc. No. 4 at 2–3). First, Mummey contends that Anderson fails to state a plausible cause of action for deliberate indifference against him. See (id. at 1, 6–10). Second, Mummey asserts that Anderson is barred from recovering monetary damages because he never requested it in his grievance. See (id. at 2, 10–14). Third, Mummey argues that Anderson cannot raise a claim for monetary damages for a violation of the Pennsylvania Constitution. See (id. at 2, 14–15). The Court will address each claim in turn.

#### 1. Anderson's Deliberate-Indifference-to-Serious-Medical-Needs Claim Against Mummey

Mummey argues that Anderson fails to allege sufficient facts showing that Mummey was deliberately indifferent to Anderson's serious medical needs. See (id. at 6). Mummey contends that Anderson's factual allegations show that Mummey "treat[ed Anderson] and performed all of the preliminary prostate cancer screening and found no positive or suspicious finds that would warrant any additional testing" insofar as Anderson did not have a family history of prostate cancer and did not have "an abnormal PSA, blood work, or fecal examination." See (id. at 7). Thus, Mummey asserts that he could not have consciously disregarded a risk that he did not believe existed. See (id.). In addition, Mummey asserts that Anderson merely disagrees with the treatment he received, which he contends is insufficient to establish a plausible deliberate indifference claim. See (id. at 8). Moreover, Mummey indicates that Anderson essentially "wants tests that [were] not medically necessary at th[e] time" Mummey examined him. See (id. at 9–10).[5]

[5] Mummey also argues that Anderson fails to plead a plausible claim for relief because he does not allege that he suffered an actual injury; rather, he alleges only that he fears having cancer.

The Court agrees with Mummey that Anderson fails to plead a plausible deliberate indifference claim in his complaint. Anderson's complaint shows that he appeared before Mummey at sick call and received medical testing—a PSA, blood test, and fecal occult blood test—for his medical issue, all which showed that he did not need a colonoscopy or further cancer testing. Yet, for no reason other than his own preference and belief, his family history of cancer generally, as well as his awareness that two other inmates received negative tests results but were later diagnosed with cancer, Anderson requested that Mummey send him for a complete prostate examination and a colonoscopy, which Mummey refused to do. When Anderson challenged Mummey's decision, Mummey responded that he would not order the requested tests because they are expensive.

None of these allegations show that Mummey was deliberately indifferent. Anderson does not plausibly allege that he actually needed medical treatment and Mummey intentionally refused to provide it. Again, Anderson acknowledges that the three tests performed showed that he did not need additional testing at that time, and he fails to allege any facts showing that either a complete prostate exam or a colonoscopy were needed and not simply his preferred course of action. Similarly, Anderson does not allege that anyone recommended that he receive a complete prostate exam or colonoscopy only to have Mummey refuse to order it.

---

See (id. at 7–8). This argument does not warrant relief because it does not relate to whether Anderson has pleaded a plausible claim. Instead, it relates only to the types of damages, if any, Anderson could recover if he prevailed on his claim. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."); Cotts v. Osafo, 692 F.3d 564, 569 (7th Cir. 2012) ("Damages are not an element of liability in a deliberate indifference claim.").

As for the last possibility for a possible plausible deliberate indifference claim, Anderson does allege that Mummey mentioned the cost of a complete prostate exam and colonoscopy. Undoubtedly, the cost of a procedure is a nonmedical reason to deny treatment. See Smith v. Wellpath, No. 24-cv-02520, 2026 WL 1505679, at *3 (E.D. Pa. May 28, 2026) ("This standard is met when a delay or denial of medically necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason, such as cost, without any effort to mitigate harm." (citing DiFraia v. Ransom, 171 F.4th 622, 630 (3d Cir. 2026))). However, Anderson's allegation is insufficient because he does not plead any facts creating a reasonable inference that either the complete prostate exam or the colonoscopy was "necessary." See Rouse, 182 F.3d at 197 (explaining that a plaintiff can demonstrate deliberate indifference if the defendant, inter alia, delays necessary medical treatment based on a non-medical reason). To the contrary, Anderson's factual allegations reveal that his requested medical treatment was merely desired.

In the end, Anderson has pleaded a mere disagreement with the proper medical treatment for his urinary issues, which is insufficient to establish a constitutional violation. Accordingly, the Court will grant Mummey's motion to dismiss Anderson's deliberate indifference claim.

### 2. Whether Anderson Requested Damages in His Grievance

Mummey moves for dismissal of Anderson's requests for monetary damages because he allegedly did not request such relief in his grievance. See (Doc. No. 4 at 11–13). Because the Court has already determined that Anderson fails to plead a plausible deliberate indifference claim in his complaint, the Court will not address Mummey's second argument.[6]

---

[6] If the Court did address this argument on the merits, the Court would deny this part of Mummey's motion because Mummey fails to attach Anderson's grievance to his motion or brief.

#### 3. Anderson's Claim for Damages Under the Pennsylvania Constitution

Mummey contends that the Court should dismiss Anderson's claim for damages caused by Mummey's alleged violation of Article I, Section 13 of the Pennsylvania Constitution. See (Doc. No. 4 at 14–15). Mummey correctly argues that there is no private right of action for monetary damages under the Pennsylvania Constitution. See Plouffe v. Cevallos, 777 F. App'x 594, 601 (3d Cir. 2019) (unpublished) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution."). Nevertheless, the Court will not address or dismiss Anderson's claims for damages based on an alleged violation of the Pennsylvania Constitution here because, as explained more below, the Court will decline to exercise supplemental jurisdiction over his state-law claims after dismissing all his federal claims against Defendants.

### C. The Correctional Defendants' Motion to Dismiss

The Correctional Defendants argue that the Court should dismiss Anderson's Eighth Amendment claims against them because he does not plausibly plead their personal involvement,

---

As such, the Court cannot review the grievance to determine whether Anderson requested monetary relief in it.

they are not medical providers, and Anderson does not plead plausible Eighth Amendment claims against them. See (Doc. No. 7 at 4–10).[7] The Court agrees.

### 1. Claims Against Harry

In his opposition brief, Anderson does not object to the Court granting the Correctional Defendants' motion to dismiss his claims against Harry and dismissing his claims against her without prejudice. See (Doc. No. 9 at 2). Anderson indicates that:

> [A]t this juncture Plaintiff does not object to dismissing the complaint against [Harry]. As it currently stands, Plaintiff does not possess any evidence, direct or circumstantial, indicating . . . Harry was aware of any evidence that suggest [sic] [she] was privy to Plaintiff's request for cancer screening or that she personally endorsed the remaining Defendants [sic] cost related [sic] reason for denying Plaintiff's request. As such, Plaintiff does not contest dismissal of . . . Harry without prejudice to reinstituting claims against her in the event information is discovered.

See (id.). Accordingly, the Court will grant the Correctional Defendants' unopposed motion to dismiss as to Anderson's claims against Harry.[8]

### 2. Section 1983 Claim Against Brittain

The Correctional Defendants argue that Anderson fails to state a plausible claim against Brittain because (1) her only alleged involvement was through her denial of Anderson's appeal to the facility manager, (2) she is not a medical provider, and (3) he has alleged "a single disagreement relating to his medical treatment plan." See (Doc. No. 7 at 6–10). In response, Anderson contends that he includes allegations in his complaint beyond Brittain's involvement

---

[7] The Correctional Defendants do not address Anderson's claims for negligence or for violations of the Pennsylvania Constitution in their brief in support of their motion to dismiss. See (id.).

[8] However, for the same reasons discussed below as to Anderson's Section 1983 claim against Brittain, this dismissal will be with prejudice.

with his grievance appeal insofar as he alleges that she "refused to order [his] cancer screening" as a cost-saving measure. See (Doc. No. 9 at 2 (citing Doc. No. 1 ¶ 31)).

Although Anderson asserts that he includes this allegation in his complaint that Brittain refused to order his cancer screening as a cost-saving measure, see (id.), his only factual allegation pertaining to her actual involvement in any alleged constitutional violation is her review and denial of his grievance appeal. In other words, Anderson does not allege that Brittain either personally refused to order his cancer screening or told him that she did so as a cost-savings measure. Instead, it is evident from his complaint that he construes Brittain's denial of his grievance appeal as constituting her refusal to order his cancer screening. Such a claim is insufficient to show Brittain's personal involvement in any alleged constitutional violation.

The mere filing of a grievance is generally insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation. See Rode, 845 F.2d at 1207–08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing). Additionally, grievances that complain of events that have already occurred and that are in the past are insufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations. See Sims v. Wexford Health Sources, 635 F. App'x 16, 19–20 (3d Cir. 2015) (unpublished) ("If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement." (citing Rode, 845 F.2d at 1208)); Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where "plaintiff's grievance only reported violations that had occurred in

the past"); see also Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) (unpublished) ("[T]he District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.") (citation omitted)).

Nonetheless, the Third Circuit has, under certain, limited circumstances, determined that a supervisory official's response to a grievance may be sufficient to show that official's personal involvement in the plaintiff's asserted constitutional claims. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249–50 (3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of their access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Johnson v. Wireman, 809 F. App'x 97, 100 (3d Cir. 2020) (unpublished) (concluding that plaintiff's allegations that state prison superintendent's and grievance officer's responses to grievances which went beyond merely denying the grievances to allegedly coerce the plaintiff to change his religious practices showed sufficient personal involvement); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court failed to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct). However, the facts in those cases involved either: (1) the supervisory officials response to the grievances constituting an alleged constitutional violation, such as by encouraging the plaintiff to change their religious practices, see Sutton, 323 F.3d at 249–50 (determining that evidence showing that supervisory official responded to final

appeal of grievance in which the plaintiff complained that he was denied religious texts by criticizing those texts, "appear[ed] to have play an active role" in the alleged constitutional violation); Johnson, 809 F. App'x at 100 & n.20 (concluding that district court erred in dismissing the plaintiff's claims for First Amendment violations against grievance officer and prison superintendent because the plaintiff alleged that the grievance officer and superintendent advised the plaintiff to observe the fasting practice of a different religion); or (2) the supervisory officials learned about the alleged constitutional violations through a grievance and acquiesced in the violations by failing to address an ongoing constitutional violation, see Diaz, 448 F. App'x at 215 (concluding that "a reasonable factfinder could find that these [supervisory] defendants had knowledge of the violations through [the plaintiff's] grievances and acquiesced in the violations by failing to address a practice of opening legal mail outside of an inmate's presence"); McCollum v. Pries, No. 22-cv-01710, 2024 WL 1416502, at *7 (M.D. Pa. Apr. 2, 2024) ("[R]esponding to a grievance that complains of events that are ongoing and denying the requested relief may constitute the knowledge and acquiescence that is necessary to show personal involvement in a Section 1983 action."); Roberts v. Luther, No. 21-cv-00958, 2021 WL 5233318, at *5 (M.D. Pa. Nov. 10, 2021) ("Several courts have concluded that a supervisory official may be held liable in connection with a review of grievances alleging an ongoing violation because the official 'is personally involved in that violation because [they are] confronted with a situation [they] can remedy directly.'" (quoting Mayo v. Oppman, No. 17-cv-00311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), report and recommendation adopted, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018))).

Here, Anderson complains about a single incident in which Mummey did not comply with Anderson's request to send him for a colonoscopy and a complete prostate examination, and

then Brittain affirmed Herb's denial of Anderson's grievance. Therefore, Anderson merely complains about a past incident, which is insufficient to show personal involvement. See Sims v. Wexford Health Sources, 635 F. App'x 16, 19–20 (3d Cir. 2015) (unpublished) ("If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement." (citing Rode, 845 F.2d at 1208)); see also Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) (unpublished) ("[T]he District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement." (citation omitted)). Accordingly, the Court concludes that Anderson fails to sufficiently allege Brittain's personal involvement in a possible Eighth Amendment violation, and the Court will grant the part of the Correctional Defendants' motion to dismiss seeking to dismiss this claim.

The Court notes that even if Anderson sufficiently alleged Brittain's personal involvement, he fails to plead a plausible Section 1983 supervisory liability claim against her. As for Anderson's allegations regarding Brittain's supervisory liability, it appears that he bases his claim on the first theory of supervisory liability, i.e., a policy or practice. See (Doc. No. 1-2 at ¶¶ 33, 35). However, his allegations are insufficient to satisfy this theory. Although Anderson asserts that Harry failed to implement a policy ensuring early cancer screening, see (id. ¶ 33), he does not plausibly plead facts showing that (1) he was actually injured, (2) Brittain's existing custom and practice created an unreasonable risk of an injury, (3) Brittain was aware that such an unreasonable risk exists, (4) Brittain was indifferent to this risk, and, perhaps most importantly, (5) that her subordinate committed a constitutional violation. Therefore, Anderson fails to

plausibly plead a claim for a constitutional violation under the first theory of Section 1983 supervisory liability.

To the extent that Anderson also premises his claim against Brittan on the second theory of supervisory liability, i.e., that she participated in violating his rights, directed others to violate them, or had knowledge of and acquiesced in her subordinate's violation, Anderson's allegations fail to satisfy this theory for reasons already explained. Anderson has not plausibly pleaded that the subordinate, Mummey, violated his rights under the Eighth Amendment. In addition, insofar as Anderson alleges that Brittain's involvement was limited to reviewing his Appeal to Facility Manager, he does not plausibly plead that Brittan participated in violating his rights or directed anyone else to do so. See, e.g., Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (affirming district court's grant of summary judgement for supervisor who was "kept abreast" of an investigation, but did not direct his subordinate "to take or not to take any particular action"); Murray v. McCoy, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) (unpublished) (explaining that prison superintendent's "awareness of [the plaintiff's] allegations concerning [the defendant correctional officer], without more, is insufficient to establish personal involvement"); Iwanicki v. Pa. Dep't of Corr., 582 F. App'x 75, 79 (3d Cir. 2014) (unpublished) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants personally directed or acquiesced in the retaliation." (citation omitted)). Accordingly, Anderson also fails to plead a plausible Section 1983 claim against Brittain under the second theory for supervisory liability.

**3. Section 1983 Claim Against Herb**

Defendants argue that the Court should dismiss Anderson's Section 1983 claim against Herb for the same reasons as his claim against Brittan. See (Doc. No. 7 at 6–10). The Court

agrees that Anderson's Section 1983 claim against Herb is subject to dismissal. As with Brittain, Herb's only involvement relates to her denial of his initial grievance, which is insufficient to show her personal involvement in any constitutional violation, which Anderson fails to show in any event. Additionally, Anderson's allegations fail to establish a plausible supervisory liability against Herb. He does not allege that she was a policymaker, or that she personally violated his constitutional rights, directed Mummey or anyone else to violate them, or had knowledge of and acquiesced in a subordinate's violation, nor could he because he does not plead a plausible constitutional violation in his complaint.

**D. Leave to Amend**

Having determined that Anderson's federal claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, based on the limited factual allegations related to Anderson's Section 1983 claims, the Court finds that allowing him to file an amended complaint as to his Section 1983 claims would be futile. This is not a situation where it appears likely that Anderson has not alleged certain facts relevant to his claim or that he could allege any facts that would reach the level of a plausible Section 1983 claim against any Defendant. Accordingly, the Court will dismiss Anderson's Section 1983 claims without granting him leave to amend his complaint.

### E. Anderson's State-Law Claims

As indicated above, Anderson also asserts state-law claims for a violation of the Pennsylvania Constitution and negligence. However, because Anderson fails to allege a plausible federal claim against Defendants, the Court declines to exercise supplemental jurisdiction over his state-law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966). Here, the Court finds no basis to retain supplemental jurisdiction over any remaining state-law claims.

The Court also notes that there does not appear to be an independent basis for subject-matter jurisdiction over Anderson's state-law claims under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." See 28 U.S.C. § 1332(a)(1). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015) (quoting Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) and Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present and intends to remain. See Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). In this case, Anderson alleges only that he is incarcerated in Pennsylvania and the individual Defendants work or operate out of the DOC or SCI Frackville.[9] (Doc. No. 1-2 at 4–5.) Therefore, at least based on the allegations in the complaint, the Court cannot conclude that the parties are completely diverse for purposes of Section 1332(a). As such, the Court will remand Anderson's negligence claims and claims under the Pennsylvania Constitution to the Court of

---

[9] Although Anderson is currently incarcerated at SCI Frackville, his domicile "before his imprisonment presumptively remains his domicile during his imprisonment. That presumption, however, may be rebutted by showing a bona fide intent to remain in the state of incarceration on release." See Pierro v. Kugel, 386 F. App'x 308, 309 (3d Cir. 2010) (unpublished) (citations omitted); see also Robinson v. Temple Univ. Health Servs., 506 F. App'x 112, 115 (3d Cir. 2012) (unpublished) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the state of which he was a citizen before his imprisonment," and that other circuits "follow a rebuttable presumption model; those courts presume that a prisoner does not change his domicile by being incarcerated in a new state, but they permit him to rebut that presumption").

Common Pleas of Schuylkill County. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) (holding that federal courts have discretion to dismiss as well as remand state law claims upon declining to exercise supplemental jurisdiction after dismissing all federal claims).

## IV. CONCLUSION

For the reasons stated above, the Court will (1) grant Defendants' motions to dismiss, (2) dismiss with prejudice Anderson's Section 1983 claims, (3) decline to exercise supplemental jurisdiction over Anderson's state-law claims, (4) remand his state-law claims to the Court of Common Pleas of Schuylkill County, and (5) direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania